UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTINE M. NIEDERMEIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 00-2495 (TFH) |
| | ) |
| THE OFFICE OF MAX S. BAUCUS, | ) |
| UNITED STATES SENATOR, | ) |
| | ) |
| Defendant. | ) |

FILED

MAR 2 7 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**MEMORANDUM OPINION**

Pending before the Court is defendant's Motion to Dismiss pursuant to Fed. R. Civ. P.

12(b)(1) and 12(b)(6). Upon careful consideration of defendant's Motion, plaintiff's opposition,

defendant's reply, and the entire record herein, this Court will grant defendant's Motion to

Dismiss.

**I. BACKGROUND**

Plaintiff Christine Niedermeier ("plaintiff") brings the instant action, alleging

employment discrimination against her former employer, the Office of Max S. Baucus, United

States Senator ("defendant"). Plaintiff worked as defendant's Chief of Staff from May, 1998

until her employment was terminated on August 15, 1999. See Complaint ¶¶ 7, 13. On

September 24, 1999, plaintiff filed a formal request for counseling with the Office of Compliance

pursuant to section 402 of the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1402,

alleging that defendant sexually harassed and retaliated against her in violation of the CAA by (i)

terminating her employment, (ii) "publicly" using "derogatory terms, false statements and

characterizations respecting [her] administrative and managerial style," (iii) permitt[ing] and

foster[ing] staff . . . in alleging" that she "was abusive and a bad manager," (iv) failing to "pay

15

[her] two months' severance," and (v) "continu[ing]" to refuse "to provide [her] with [her] personal belongings . . . ." Def's Exh. A1 at 2-3; Complaint at ¶ 14. In accordance with the mandatory administrative procedures of the CAA, plaintiff completed the counseling procedures on September 27, 1999. Complaint at ¶ 14. On November 5, 1999, plaintiff completed mediation; she received her notice of the conclusion of mediation on November 9, 1999. Def's Exh. B1. Pursuant to 2 U.S.C. § 1404, plaintiff then had until February 7, 2000 to file a lawsuit based upon these claims. However, plaintiff did not file any lawsuit but instead voluntarily "elected not to pursue the matter. . . ." Complaint ¶ 14.

On June 16, 2000, plaintiff filed a second CAA charge with the Office of Compliance against defendant. See Def's Exh. B3. Plaintiff completed counseling pursuant to section 402 of the CAA, 2 U.S.C. § 1402, on June 19, 2000. Complaint ¶ 2. She completed mediation in accordance with section 403 of the CAA, 2 U.S.C. § 1403, on July 20, 2000, and received her notice of the end of mediation on July 24, 2000. See Def's Exh. B3-B4. On October 18, 2000, plaintiff filed the instant action, alleging sex discrimination in the form of "continuing sexual harassment" (Count I) and reprisal (Count II).

## II. APPLICABLE LEGAL STANDARDS

In a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1), the burden of proof rests on the plaintiff who asserts that the Court has jurisdiction over the complaint. Gibbs v. Buck, 307 U.S. 66, 72 (1939); Payne v. District of Columbia, 559 F.2d 809, 820 n.59 (D.C. Cir. 1977). Because the challenge on a Rule 12(b)(1) motion is to the court's jurisdiction rather than to the sufficiency of a plaintiff's allegations, the court may consider evidence outside the pleadings. Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); see also McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 184 (1936) ("the trial court is not bound by the

2

pleadings of the parties, but may, of its own motion, if led to believe that its jurisdiction is not properly invoked, 'inquire into the facts as they really exist'").

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must construe the Complaint broadly and must accept all of plaintiff's factual allegations as true. Jericho Painting & Special Coating, Inc. v. Richardson, 838 F. Supp. 626, 627 (D.D.C. 1993). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## III. DISCUSSION

Plaintiff's sexual harassment and retaliation claims against defendant are based upon the same two allegations: (1) defendant's alleged continued withholding of plaintiff's personal property and (2) Senator Baucus's alleged practice of publicly disparaging plaintiff's job performance and fostering his staff and advisors to do the same. See Complaint at ¶¶ 16-17. Defendant has moved to dismiss both claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for failure to comply with the requirements of the CAA, lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

### A. Sexual Harassment Claim

#### 1. Withholding of Personal Property

Plaintiff's sexual harassment claim that defendant is withholding her personal property is the same allegation that was asserted by her in her first administrative complaint filed on September 24, 1999 (hereafter "Niedermeier I"). In Niedermeier-I, plaintiff alleged that defendant did not permit her "to retrieve [her] personal belongings from the office" and refused "to provide [her] with [her] personal belongings," and told her after her termination that she

3

"could not touch anything in [her] office." See Def's Exh. 1 (Lombardi Affidavit) at 2; see also

Complaint ¶¶ 13-14. In the instant action, plaintiff alleges that defendant is "continuing to

withhold from plaintiff her personal property and work product." Complaint at ¶ 17. Because

this claim was previously asserted by plaintiff in Niedermeier-I and because plaintiff was thus on

notice at that time that she could bring suit to challenge this alleged behavior, this claim is now

time-barred and must be dismissed.

Section 404 of the CAA provides in pertinent part that "[n]o later than 90 days after a

covered employee receives notice of the end of the period of mediation," the employer may file

an action." 2 U.S.C. § 1404. Plaintiff brought this sexual harassment claim in Niedermeier-I and

received her notice of the end of the mediation period on November 9, 1999. See Def's Exh. B1

at 1. Accordingly, if plaintiff wished to pursue a sexual harassment claim based upon the alleged

withholding of her personal property, she was required to file a lawsuit no later than February 7,

2000. As discussed above, plaintiff elected not to pursue her legal remedies at the conclusion of

the administrative process in Niedermeier-I. By electing not to file this lawsuit within 90 days of

her receipt of the notice of the end of mediation in Niedermeier-I, plaintiff failed to meet the

prerequisite to invoking this Court's jurisdiction to adjudicate her sexual harassment claim based

upon defendant's alleged withholding of her personal property. See Hamm v. Nasatka Barriers

Inc., 166 F.R.D. 1 (D.D.C. 1996) ("limitations and conditions upon which the Government

consents to be sued must be strictly observed and exceptions thereto are not to be implied"); see

also Spears v. Missouri Dep't of Corr. And Human Res., 210 F.3d 850, 853 (8th Cir. 2000)

(holding that plaintiff is barred from asserting as adverse employment action the retaliatory acts

that she alleged in a prior charge upon which she did not file timely suit).

Plaintiff attempts to circumvent this statute of limitations problem by asserting the

4

continuing violation theory. However, to benefit from this narrow exception to the limitations period, a plaintiff must show that the "continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period. . . ." Taylor v. Fed. Deposit Ins. Corp., 132 F.3d 753, 765 (D.C. Cir. 1997); see also Kilpatrick v. Riley, 98 F. Supp. 2d 9, 17 (D.D.C. 2000) ("The D.C. Circuit has made clear that a plaintiff may not avail himself of a continuing-violation theory to save untimely . . . claims unless he lacked notice or awareness, until after the limitations period, that the complained-of-actions were unlawful"). The plain language of this Complaint shows not only that plaintiff believed at the time of the alleged withholdings of her personal property that the acts of withholding were discriminatory, but also that she initiated proceedings with the Office of Compliance in September, 1999 on that precise claim. See Complaint at ¶¶ 9-14. By her own admission, plaintiff knew about the allegedly unlawful act in September of 1999, believed that it was discriminatory when it occurred, initiated proceedings based upon this alleged act, and then voluntarily "elected not to pursue the matter." Complaint at ¶ 14. Under these circumstances, plaintiff cannot rely upon the continuing violation theory to circumvent the limitations period. See Taylor, 132 F.3d at 765 (refusing to apply the continuing violation theory, because the alleged violation is not one that "did not become clear until it was repeated during the limitations period"); Kilpatrick, 98 F. Supp. 2d at 19 ("A claim that is continuing only because a putative plaintiff knowingly fails to seek relief earlier is exactly the sort of claim Congress intended to bar with the statute of limitations period"); see also Sosa Liang Lo v. Pan Am. World Airways, Inc., 787 F.2d 827 (2d Cir. 1986) (pointing out that permitting plaintiff repeatedly to file EEOC charges on the same facts would make the statutory time limitations meaningless); Dowdell v. Sunshine Biscuits, Inc.,

90 F.R.D. 107, 115-16 (M.D. Georgia 1981) (in dismissing duplicative claims for lack of

jurisdiction, holding that a "Title VII plaintiff cannot be permitted to extend this [statutory]

period by repeatedly filing broad, duplicative charges with the EEOC and obtaining multiple

right to sue letters"), *aff'd*, 673 F.2d 1343 (11th Cir. 1982).[1]  The fact that plaintiff may still be

experiencing the effects of defendant's action today is not sufficient to defeat the time bar in this

case.  See Palmer v. Barry, 894 F.2d 449, 453 (D.C. Cir. 1990); Taylor, 132 F.3d at 765 (a time-

barred claim "cannot be revived by pointing to effects within the limitations period of unlawful

acts that occurred earlier"); Pickney v. Robinson, 913 F. Supp. 25, 30 (D.D.C. 1996) (in

determining whether claims challenging employment decisions are timely filed, "what matters is

when the decision was made and not when the effects of the decision was felt"); see also

Delaware State Coll. v. Ricks, 449 U.S. 250, 258 (1980) (limitations period in employment

discrimination actions starts to run on the date the employee is notified that an adverse

employment action will occur, regardless of whether the effects of that action are felt at a later

date; the "proper focus is upon the time of the discriminatory acts, not upon the time at which the

consequences of the acts became most painful").  Defendant's alleged failure to remedy the time-

barred conduct, by "continuing still" to withhold plaintiff's personal property, does not convert

the act into a new act of discrimination.  See Lever v. Northwestern Univ., 979 F.2d 552, 556 (7th

Cir. 1992) ("An employer's refusal to undo a discriminatory decision is not a fresh act of

discrimination"), *cert. denied*, 508 U.S. 951 (1993).  Accordingly, plaintiff's sexual harassment

claim based upon defendant's alleged continued withholding of her personal property is

---

[1]     The cases cited by plaintiff in her opposition to defendant's Motion are
inapposite, because they do not address the situation of a plaintiff who was aware
of the alleged discriminatory nature of the acts, exhausted the administrative
procedures, and failed to file suit within the statute of limitations.

6

dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

   2. Public Disparagement of Plaintiff's Job Performance

   Plaintiff's sexual harassment claim also alleges that Senator Baucus disparaged her job

performance and had his staff and advisors do the same; plaintiff alleges that this conduct was

*quid pro quo* for her July 1999 objection to defendant's alleged sexual harassment.  Complaint at

¶ 16.  Again, this is the same claim that plaintiff asserted in Niedermeier-I[2], except that plaintiff

has now added "advisors" as wrongdoers and plaintiff claims that the public disparagement is

"continuing still."  Id. at ¶¶ 15-16.

   To maintain a claim under the CAA, plaintiff must allege a violation that occurred within

180 days prior to filing her request for counseling.  See 2 U.S.C. §§ 1361(e), 1402(a), 1408(a).

This requirement is of utmost importance because Congress has expressly limited its waiver of

sovereign immunity to claims alleging violations occurring within 180 days of the filing of a

request for counseling.  2 U.S.C. §§ 1401-1404; see also Soriano v. United States, 352 U.S. 270,

276 (1957) ("Congress was entitled to assume that the limitations period it prescribed meant just

that period and no more").  The Court lacks subject-matter jurisdiction over plaintiff's claim if

she has not alleged a violation within the CAA's limitation period.  See Gibbs, 307 U.S. at 72

(plaintiff has burden of proving that a court has jurisdiction).

   In order to survive dismissal, plaintiff cannot rely on vague or conclusory allegations of

harassment; instead, a plaintiff must "clearly allege specific instances of harassment occurring

within the limitations period."  Gaughan v. Nelson, No. 94-3859, 1997 WL 80549, at *5

---

   [2]    In Niedermeier-I, plaintiff alleged that Senator Baucus "publicly" used
      "derogatory terms, false statements and characterizations respecting [plaintiff's]
      administrative and managerial style" and "permitted and fostered staff . . . in
      alleging" that plaintiff was abusive and a bad manager. . . ."  Def's Exh. A1 at 2.

7

(S.D.N.Y. Feb. 26, 1997) (dismissing retaliation claim where plaintiff alleged only non-specific and conclusory allegations of retaliatory conduct within the limitations period); Terrell v. Pena, No. 96-1634, 1997 WL 349999, at *2 (D.D.C. June 11, 1997) (dismissing claims where plaintiff's allegations of a present violation "were muddled and vague"); Miller v. Runyon, 88 F. Supp. 2d 461, 470 (M.D.N.C. 2000) (dismissing complaint where plaintiff made general allegations of discrimination during the limitations period rather than averring specific instances of discrimination during the limitations period); Sharkey v. Lasmo, 992 F. Supp. 321, 333 (S.D.N.Y. 1998) (no continuing violation where plaintiff asserted a general pattern of failing to offer plaintiff positions during the limitations period, but failed to allege any specific instances within the limitations period).

In the instant action, not only does plaintiff's Complaint fails to point to any remarks that were made within the 180-day period preceding the filing of this action, but plaintiff's Complaint wholly neglects to allege any specific disparaging remarks Senator Baucus, his staff, or his advisors made about plaintiff even outside this limitations period. Plaintiff's Complaint merely asserts that,

> [t]he Senator has continued his vindictive and mean-spirited campaign of sexual harassment and retaliation against Ms. Niedermeier since the termination of her employment [in August of 1999] and even after the cessation of her initial complaint against him for such unlawful conduct – and he is continuing still – by speaking ill of her job performance as his Chief of Staff to prospective employers, to those who call for employment references (and to others generally) and by having members of his staff and his advisors do so, when in fact plaintiff's performance as Senator Baucus's Chief of Staff in 1998 and 1999 were [sic] exemplary in all respects. . . .

Complaint ¶ 15. Aside from the date of plaintiff's termination – August of 1999 – which is not within the 180-day limitations period, plaintiff does not allege any other specific dates on which

any disparaging acts occurred.  Therefore, plaintiff has not met her burden of establishing that

defendant's alleged unlawful acts are within the limitations period.  Moreover, plaintiff has also

failed to specify the disparaging comments that were made or exactly how Senator Baucus, his

staff, or advisors spoke "ill" of her job performance; nor does she allege to whom the statements

were made, the positions for which she was denied employment as a result of negative

references, or to who these alleged references were given.  Plaintiff's vague and conclusory

allegations in this case are clearly insufficient to satisfy her burden of demonstrating that the

alleged acts occurred within the 180-day period and do not provide the defendant with adequate

notice of the claims against it.[3]  See Gaughan v. Nelson, No. 94-3859, 1997 WL 80549

(S.D.N.Y. Feb. 26, 1997).  Accordingly, plaintiff has failed to demonstrate that this Court has

jurisdiction over the public disparagement portion of plaintiff's sexual harassment claim and it

must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**B. Reprisal Claim**

        In Count II of the Complaint, plaintiff alleges that defendant retaliated against her in

violation of section 207(a) of the CAA, 2 U.S.C. § 1317(a), because she filed Niedermeier-I in

September of 1999.  See Complaint at ¶ 19.  The retaliatory conduct alleged in Count II is

precisely the same conduct upon which plaintiff bases her sexual harassment claim.  Specifically,

plaintiff alleges that defendant retaliated against her by (1) withholding her personal property and

---

[3]        If plaintiff was attempting to rely on the specific allegations of harassment
        asserted in Niedermeier-I, the Court would lack jurisdiction over this claim for the
        reasons set forth in section IIA1 of this Opinion.  Plaintiff's argument that the
        claims in Niedermeier-I should not be time-barred because plaintiff was unaware
        that additional violations would occur is unavailing.  The proper inquiry under a
        continuing violation theory is not whether future violations are foreseeable, but
        rather whether the plaintiff knew she had a claim at an earlier time.  See Taylor,
        132 F.3d at 765; Kilpatrick, 98 F. Supp. 2d at 16.

(2) publicly disparaging plaintiff's job performance and fostering his staff and advisors to do the same. Id.

### 1. Withholding of Personal Property

To establish a prima facie case of retaliation, a plaintiff must show not only that she participated in a protected activity and that the employer took an adverse action against her, but that the adverse action was caused by plaintiff's protected activity. See Childers v. Slater, 44 F. Supp. 2d 8, 18-19 (D.D.C. 1999). In this case, plaintiff has failed to show and cannot show, as a matter of law, the requisite casual connection.

Plaintiff alleges that the withholding of her property is in retaliation for "charging him with sexual harassment by lodging a request for counseling and engaging in mediation under provisions of the [CAA]." Complaint at ¶¶ 16, 19. The counseling and mediation period to which plaintiff refers began on September 24, 1999. Complaint at ¶ 14. However, plaintiff's Complaint also alleges that defendant began withholding her property on August 15, 1999. Therefore, the allegedly adverse action of withholding plaintiff's property occurred more than one month prior to plaintiff's participation in the protected activity. Given this timeline, it is impossible for plaintiff to establish that the adverse action was caused by plaintiff's participation in the protected activity. See Glass v. IDS Fin. Servs., Inc., 778 F. Supp. 1029, 1060 (D. Minn. 1991) (adverse action that occurs prior to plaintiff's engagement in protected conduct cannot constitute retaliation); see also Reaves v/ Westinghouse Elec. Corp., 683 F. Supp. 521, 527 n.7 (D. Md. 1988) (finding no retaliation when employer's adverse action began before employee filed charge). Because plaintiff can prove no set of facts in support of this claim that would entitle her to relief, plaintiff's reprisal claim based on the withholding of her personal property

10

must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[4]

    2.  Public Disbaragement of Plaintiff's Job Performance

      The remainder of plaintiff's reprisal claim alleges that Senator Baucus publicly made

negative comments about plaintiff's job performance and encouraged his employees and advisors

to do the same.  Again, as discussed in the sexual harassment section of this Opinion, plaintiff

has failed to provide the Court with any specific instances of this disparagement.  Plaintiff

merely alleges that defendant has been retaliating against plaintiff "since the termination [in

August of 1999] . . . and . . . [is] continuing still . . . ."  This vague allegation establishes only

that plaintiff believes that defendant was retaliating against her in August of 1999; that date is

more than 180 days prior to June 17, 2000, the date that plaintiff initiated the administrative

---

[4]    Even if plaintiff could establish a causal connection, her reprisal claim based upon defendant's alleged withholding of her personal property would still be subject to dismissal because the alleged action occurred outside the CAA's limitations period.  As discussed above, this Court has jurisdiction over plaintiff's claims only if she filed her request for counseling within 180 days of the allegedly adverse act.  See 2 U.S.C. §§ 1381(a), 1402.  Defendant's withholding of plaintiff's personal property occurred in August of 1999, nearly one year before she filed the request for counseling upon which the instant action is based.  Complaint at ¶ 13.  Therefore, plaintiff's claim is outside the applicable limitations period.  Moreover, this claim cannot be salvaged under the continuing violations theory, because plaintiff's administrative complaint in Niedermeier-I alleged that defendant was withholding her property and she was therefore on notice at that time of the allegedly unlawful behavior.  See, e.g., Taylor, 132 F.3d at 765 (untimely conduct can only be the basis of a continuing violation if the conduct "could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period. . . ").  Finally, as discussed above, the fact that defendant may be continuing to withhold plaintiff's personal property does not convert this into an actionable continuing violation, because effects alone are insufficient to defeat a time bar, even under the continuing violation theory of liability.  See, e.g., Palmer, 894 F.2d at 453.  Accordingly, this Court lacks subject matter jurisdiction over plaintiff's personal property reprisal claim and it must also be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

process in this action.  Therefore, plaintiff has failed to meet her burden of establishing that this

alleged conduct occurred within the 180-day limitations period.[5]  Her allegation that the conduct

is "continuing still" does not satisfy plaintiff's burden to "allege specific instances of [reprisal]

occurring within the applicable limitations period."  Gaughan, No. 94-3859, 1997 WL 80549, at

*5.  Accordingly, plaintiff's reprisal claim based upon the alleged public disparagement of her

job performance must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), because this Court lacks

jurisdiction over this claim.[6]

## IV. CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss is granted and this case is

dismissed with prejudice.  An order will accompany this Opinion.

March 27ᵗʰ, 2001

Thomas F. Hogan
United States District Judge

---

[5]    The CAA mandates that the administrative process on claims for reprisal must be
initiated within 180 days of the defendant's allegedly retaliatory acts.

[6]    Plaintiff's request for discovery to prove that she actually performed her Chief of
Staff duties in an outstanding fashion and was thus deserving of a positive
recommendation is unfounded.  This Court cannot grant discovery to allow
plaintiff to attempt to establish the elements of her prima facie case because this
Court lack subject matter jurisdiction over her claims due to their untimeliness.